May it please the Court, my name is Tom Pasternak. I'm here for SOMEBEAM PRODUCTS. The lower court's claim construction was wrong, and the lower court's summary judgment decision was wrong. I'm going to address those two points. This is a scale about scales. It's the kind of scale that you weigh yourself in the morning, you step on, and it gives you an indication of your weight. And the patent relates to the corner bearings, which are structures which transmit forces from your body to a mechanism that gives you an indication of your weight. The claim construction, the late claim construction that the trial court came up with was wrong. It was based on what the trial court called a disclaimer. That's the basis of the construction. It was not a disclaimer. It was an explanation. It was an acknowledgement. The specification sections that the trial judge relied on to come up with this new claim construction, which said that certain structures had to be parallel, was based on a misapprehension, a misunderstanding of how these scales work. While they appear to be simple devices, what goes on inside them is complicated. It's dynamic. It's not a static mechanism. Everyone knows when you step on a scale, you can see the dial move, and that's an indication of what's going on in these scales. Let me ask you a question at the outset about what the adjustment, for lack of a better term, that the bearings are capable of is principally designed to address. Is it principally designed to address the problem that you just referred to, which is when somebody steps on the scale, there's a little bit of movement in different directions, and you want to have the bearings and the levers seated correctly? Or is it intended to address the problem of manufacturing tolerances at the time of assembly, so that you want to have, when you first have the scale put together, even though some of the units will have the holes and so forth and the bearings in different places, you want to have some wiggle room to get them to line up, or both? Both, Your Honor. Okay. I think the only one that really matters today is the problem of getting an accurate measurement. When you step on a scale... After you've got the assembled scale, when the customer steps on the scale. That's correct, and there's a lot in the briefs you'll see about the state of assembly, and the reason it's important today is to understand what's going on in the scale, you need to consider the state of assembly when the springs are connected and when someone steps on it. The evidence you've seen about motion is not that state of assembly. The videotape that Homedics relies on extensively in its brief, if you look at it, it's an unloaded scale with the springs disconnected, and it has a person's finger. It's deceptive, and it's not an accurate way of determining what's going on in the scale. Back to the disclaimer. I looked at that video several times. What is inaccurate about what it shows going on in the scale? It's inaccurate, Your Honor, because no one's standing on the scale. Yeah, that's true, and it's also green or yellow instead of red or blue. Correct. But so what? What is inaccurate about the video with regard to what it shows about the bearing that's involved? What the video actually shows is accurate, but what's inaccurate is what one needs to consider in trying to figure out how a scale works and to try to figure out why this discussion of pivoting and rocking in the prior arc is not a disclaimer, which is at the heart of the whole problem with the claim construction. What kind of pivoting and rocketing was going on in the prior arc that you were trying to overcome? There was various types, and that's a little bit confused. The trial court and Homedics relies on the 326 patent for a certain type of pivoting. That's not the type of pivoting or rocking that occurs in the invention, and there's various types of motion that could be at issue. When you say in the invention, you meant in the accused product, right? That's correct, Your Honor, and there is confusion, and that's part of the problem with the summary judgment determination. I thought you were trying to go in response to Judge Flager and say, well, when you look at this thing in an unassembled form and you just reach in there and bang it around, and of course these things move around a lot. Once you wire them up and you get the tension wires all keyed up to it, then I think you were about to say if you stepped on the accused scale, you'll have a pure vertical force going down because the linkage of all the wires are going to tighten the thing up so the little thing that's sitting in the nipple doesn't have any wiggle room. That's correct. How do we know that? Tell it to me now, or I'm just saying it, that doesn't do the trick. The essence of the invention as described in the patent, and as one of ordinary skill in the art who understands how these scales work, and what the record will show if we are allowed to get evidence on that point, which we were precluded by, by the sua sponte summary judgment. That's the second biggest problem, I guess, is the day we got the summary judgment motion, a new claim construction came into effect that implicated a whole body of evidence that no one before that day even thought about. We were shut out from presenting that evidence. So these questions about what happens when I stand on the scale at that critical point where the base of the bearing abuts up against the platform, where the judge said it has to be parallel, no one knows what happens there. We can all guess, and if you're asking me what I think happens, I think what happens there is it could be parallel, or maybe it is, but more to the point, it may not matter. But let's come back to where you were in the beginning, because you said that the claim construction was based on the disclaimer. You said there's no disclaimer. So my assumption from that was that you were going to agree that if we found there was a disclaimer in the specification, then the new claim construction was okay. Now the disclaimer is disclaiming anything other than pure downward force, correct? Correct. Now why, when I read the, it looked to me as if that's why the trial judge was revising the claim construction was that he said, well I don't think we want to go off on saying that this pure downward force because there's been no evidence about what the accused device does, but if I got a claim construction, it will work worse. Now why isn't there a disclaimer? The patent is talking about this new invention exerts pure downward force. There's no disclaimer. They apply only vertical forces, no other forces on the legs. That's exactly right, but that pure vertical force is only applied after dynamic motion of settling on the scale and the movement pivoting and rocking. And in this case, the additional feature, what Sunbeam has is the horizontal motion of the tabs. Only after all of that occurs is the pure vertical motion applied. You're claiming a scale that has been used partly. You're claiming a scale. So if I go and I buy the scale, right, and I get it out of the box, I'm there in time. I can then measure the scale, the component scale against your claims, right? But we also aren't describing a scale in the box. The inventor is describing a scale that's designed to measure accurately and is describing what happens when someone uses it. I know your argument that they are misadvertising because their scale can't be averaged. But the short of the matter is that all the old scales wobble a little bit. Once you stand on them long enough and settle down, it's sending a vertical force down. I don't agree with that, Your Honor. That's the problem with the prior art. The old scales, after they settle down to some point, could still have an angle in it. That's the problem. We added a feature that attempts to ensure that it is overly accurate. So you are surrendering scope over any accused device that could have a little angle in it. I don't think that's what we're doing. What I'm trying to say is the disclaimer is only looking at a scale of the old type that is moving as it settles out. A scale of that type, when you weigh it, could have an angle in it and some inaccuracy. So I guess if that's surrendering scope by describing the prior art that way, yes. Suppose you took the .326 pivoting bearing. I think we can all agree that in the .326 at least the bearing does pivot, right? Yes, Your Honor. But you take that. It's shown in Figure 5 of the .326. If that bearing were attached to the platform by tabs, and you increased the size of the holes for the tabs in order to permit a little wiggle back and forth of the bearing, as well as the pivot, you would say that the .326 design then infringes? Everything else being equal, yes. It's adding an additional feature onto the old sort of pivoting bearings. And the additional feature would be a little wiggle room in the holes that accommodate the tabs. It would be the allowance of horizontal motion. Any degree of horizontal motion. Any degree. But isn't it the case that as a matter of just manufacturing tolerances, you're going to have some horizontal motion. You're certainly not going to have a kind of German engineering fit between the tabs and the holes for the tabs with respect to a scale that sells for, what, $8 or something. Well, I'll concede that in the real world nothing's perfect. And that's when we talk about pure wiggle. The tab hole has got to be bigger than the tab, right? I mean, just as a matter of physics. The prior also has totally fixed bearings where there is no movement at all. I understand. If you want to say there's a little movement in that because it's not a perfect world, I concede that. Well, I'm just trying to see if you would say that if it's attached with tabs and if there is some degree of measurable movement, it would infringe. Yes. Okay. To summarize my point on the disclaimer, the judge did not understand the dynamic nature of scales and that when we were describing the rotation, it was a problem with the prior art. And the fact that rotation can occur in the accused scale doesn't mean that it isn't covered by the patented claims. And that decision led right to the other major problem here. And this was the court's sua sponte summary judgment determination where he held as a matter of law that no reasonable juror could find that the base of a bearing that can pivot and rock parallel to the platform infringes. He just said that. So let's look at the record he used to come up with that decision. What we have were principally two things as far as what the movement was. We have the hometics video, which is in the record at J2733.1. So we have to assume a juror would see that. So what he would see is an unloaded, disconnected scale with a person's finger on it. That would be a data point. They'd explain what it is, I'd explain what it is. And the record showed what happens in a loaded scale after it was taken apart. Not the motion, but in the record, and I'll point you to the 28424344, we have pictures of an accused scale taken apart, and you can see that the bearings have moved by looking at the wear patterns, the scratches. So that is all a juror had. Who knows what a reasonable juror would do? He could have come out any which way. Now, you presented that evidence as part of your motion for summary judgment of infringement, right? Yes. Right. Now, you argue that you were taken by surprise by the judge, and no doubt that's right, that the judge not only denied that motion but actually entered sui sponte, summary judgment. Correct. Now, what evidence, presumably the evidence you introduced to show that there was summary judgment property, under summary judgment of infringement would be very much the same kind of showing you would make to show that the other side was not entitled to summary judgment. What would you introduce that would be different? What claim construction would I have to be confronting? That's a separate issue of whether or not the judge changed his claim construction. The judge said, well, I really am just refining the point, elaborating on the point I made before. Let's set that aside for a moment and try to treat the pure evidentiary question. I understand that they're tied together, but as a matter of pure evidence, it seems to me at least possible that you threw everything you had, properly so, into your own summary judgment motion, and the judge could perhaps reasonably conclude that that's pretty much what anybody's going to be able to show in opposition to the other side's motion. In other words, if we'd had cross motions for summary, let me put it this way. Suppose we'd had cross motions for summary judgment. What additional evidence would you have introduced that was necessary to defeat their motion that was not part of your motion? I can't think of any. Well, then that puts us in a position of wondering why we should send this back for further proceedings. If you can't think of any evidence that was left out that you would introduce before the judge, had you had noticed that he was contemplating the possibility of summary judgment. I misunderstand the question. Was he contemplating? I probably didn't state it very clearly. If he was contemplating new claim construction, there's a vast amount of new evidence I'd want to develop. If on the claim construction as it stood, he was contemplating summary judgment of non-infringement, there is nothing, there would be no other evidence. So really all comes down to your point that you believe he embraced a new claim construction, entered summary judgment predicated on that claim construction, which could not have been entered predicated on the earlier claim construction. Correct. But if we, again, if we conclude that that's not what happened and that all he did was to explain his earlier claim construction in a slightly more elaborate fashion, then in that setting is there any evidence that you were unable to present or didn't have occasion to present? No, sir, there wasn't. Okay, I understand your position. So in that last situation, the fact that he granted summary judgment without having had a motion is really irrelevant. No, sir, that's not correct. He granted summary judgment based on a brand-new claim construction. No, no, I think when Judge Klobuchar said in that last situation, he was taking my hypothetical. All right. Yes, that's right. That's right, as opposed. Thank you. So it all turns on whether the new claim construction was, in fact, a new and different claim construction. Well, almost. I would say that even based on the new claim construction, as the record stood, I just want to make sure, as the record stood, summary judgment should have been granted because the record wasn't fully developed. I understand, but as to the procedural problem, that goes away if the claim construction is not changed. That's correct, Your Honor. Okay. Thank you for your attention. I have nothing further. Thank you. We'll hear from Mr. Hallin next. Thank you. Good afternoon, Your Honors. I just want to first get to this assertion that there was some sort of surprise with the claim construction ruling. It's already been set forth in our brief that our position was set forth from day one, even before the very first claim construction ruling. Why didn't you make a motion for summary judgment on non-infringement? Because we had an invalidity. If you may recall from our brief, we developed our variant. You put in a motion for, they moved to summary judgment of infringement. That's right. You moved to summary judgment of invalidity. We took our strongest argument. And you didn't move for summary judgment of non-infringement. Why? Because we thought invalidity was a slam dunk because we started making and selling this thing back in the 80s before they even filed their application, years before they filed their application. So you misjudged the case? Well, not really. The judge set that aside as moot because he ruled first against them on their motion. So your position essentially is that if you go back, if we should send this case back to the district judge on either a procedural ground or a claim construction ground, that the easiest way for the judge to proceed in this case would simply be to grant your summary judgment of invalidity motion and you're done. Well, no. I think if it was remanded, the same result would come about. I understand. But what you would probably say to the district judge, based on what you just said to Judge Blagert, is judge, save yourself a lot of heartache here. And you've already been reversed once by the federal circuit. Make it easy on yourself. This is an on-sale case. Well, it's a prior art case. Well, it's an on-sale case in addition to being a non-infringement case. We thought it was a rifle shot. We chose it. I understand. I want to point something out, though. Again, it's been our position from day one, of course, that bearings which rock or pivot do not meet the claim limitation of face-to-face or sliding engagement. And I want to point out, too, that in the very first claim construction ruling of the court, well before, a half year before summary judgment rulings, the court did mention the word parallel. And he did put a statement in that claim construction ruling that required that they stay parallel. This wasn't noted on the record by any parties or in the briefs. I want to point out, this is on joint appendix page 616. And, again, this is from the April 29, 2009 claim construction order. The court held, the district court held, quote, in both claims 1 and 8, the bearing member and the platform are parallel to each other. They are not in a pivot. What page are you on? It's joint appendix 616. Okay. Go ahead. Your point is that the parallel motion doesn't come as a big surprise. No. It was there from day one. Maybe not day one, day two. Okay. Day two. The first claim construction ruling. And then I want to point out, go ahead, that in the subsequent ruling to that, the July 6, 2009 order, that resulted from a motion for reconsideration, the court again talked about parallel on page JA, let's join appendix 703. Because the court was discussing how the platform and the bearing base have to remain parallel. He talked about possible vertical movement, but he stated repeatedly that they have to stay parallel. So, again, this parallel thing was not a new notion at all. And all the parallel claim construction means is that the bearing must remain vertical. You could have just as easily said the bearing has to remain vertical. But, of course, again, we get into this manufacturing tolerances type question. Obviously, if the bearing is moving in one direction or another, there's going to be some slop. It's not going to remain. Euclidean verticality is not going to be maintained, right? If there's pressure on the thing that's pushing it in one direction, it's probably going to give it a little bit of a tilt before it readjusts. Are you talking about the accused or what's in the patent? The accused will always be tilting. No, I'm not talking about that. I'm talking about the patent. The patent is describing something which in a commercial embodiment of this patent, it seems to me that you will always have some degree of tilt during the adjustment, the horizontal adjustment process. You can't have perfect, perfect flatness throughout this. I disagree, Your Honor. Let me explain why. Because, again, these bearings, the platform sits on top of what we call the base of the bearing. It's actually on the top. The platform is being forced, by just the weight of the platform alone before it's being used, it's being forced down in this bearing arrangement. This bearing arrangement has a flat base, as shown in the patent. It slides back and forth like this. Once a person puts its weight on it, and again, the motion is very limited. You'll see in the patent, these tabs only allow very small movement. This thing is only going to slide back and forth. It's forced into that position. What is this, about a sixteenth of an inch? It was set forth in the patent. It's a very small amount. That's sliding horizontally. That's right. It can only slide horizontally in the way it's shown in the patent, in the way it's described in the patent. There's never any tilting. In fact, the patent says repeatedly, it must stay vertical. The engineering problem is that the old style had vectors that were non-vertical, that is, that did not directly weigh the object standing on the scale. Some of the effect skewed in a vector one way or another. That is correct. You're saying the invention was intended to bring all those vectors into the single vertical plane. That was the intent of what was in the patent, and that's how it was explained in the patent. Your argument is your particular bearing still has some of the old style vectors still in it. Undoubtedly. It's the same exact arrangement. You can see the comparison on page 19 of our brief. It moves exactly in the same manner as the prior. It uses the same technology. It's a pivot point resting in a dimple, and it pivots back and forth. And the bearing is attached to the platform by tabs which go through slots, right? That's right. Loosely attached. The slots are a little bigger than the tabs. Yes. I can show you an example right here. Thank you. We actually had the scales to look at. Was the 326, and it's hard for me to tell from the exploded diagram in the 326, whether the rocking bearings in that case had tabs or not. What was it that attached the rocking bearings to the platform in the 326? Do you happen to know? I thought it was tabs. Well, I don't know. It could be. It's just hard to see. I'm looking at 3475 in the appendix. 3475. There are several different places. Figure 5? Figure 1. Figure 1. Yes, Your Honor, there were tabs. I can point them out to you. And is that in Figure 2? Are those the tabs down there in the lower left? They're shown in Figure 3. Oh, Figure 2, you're right, they're shown there also, Your Honor. Okay. They can also be seen in Figure 1 where you can see where the cross-section was taken, 3-3. That's where the tabs are. Those are the tabs. That's what I wanted to know. So presumably there's going to be some kind of horizontal motion because the holes are going to be bigger than the tabs. They have to be. No, there's no horizontal motion. Let me explain. Well, there's going to be some kind of motion. The tabs are always going to be smaller than the holes, right? The tabs will always allow movement. Right. So if the device is not under load, the tabs are going to allow some movement in a back-and-forth. I mean, the holes are going to allow the tabbed device to move a little unless the tabs are crimped down in a way that makes it impossible for them to move, right? Well, here's why there wouldn't be horizontal movement, Your Honor, because, again, there's a pivot nose shown in this patent. Again, that's in Figures 5 and 6. It features 74. It's a pivot nose that sits within a dimple. And so this thing can move horizontally. Is there a dimple in the 326? Yes, there is. It's the same exact arrangement as ours. Okay. So what you're saying is whatever… The dimple is shown on Figure 1. It's Feature 88 pointing to it. I'm sorry. You're saying whatever horizontal movement might be incurred by the overall design is largely absorbed by the rocking dimple process. Is that what you're saying? If I follow you right, yeah. The only movement that's allowed is the pivoting because it's sitting in a dimple. Well, the dimple's up here, but it's sitting in a dimple. So that absorbs any horizontal movement that might exist except for something very minuscule. That's correct. It prevents horizontal movement except at some microscopic level, which is what one of our employees testified to. Okay. So any play in the tab slot would be impeded by the resistance of the device, at least under load, to move the nose from the dimple. Yes. Good. Yes. Okay, I'm with you. At least I understand. Okay. The claim construction itself, opposing counsel addressed the disclaimer issue a little bit. But again, I want to point out that there was the disclaimer issue first. The prior was disclaimed and was discussed as following. Quote, the concept of having the one-piece bearing member pivot prevents the application of a pure vertical force and increases the possibility that an undesired binding or force moment will be applied to the force collection lever. And, of course, then the patent goes on about the present invention, saying, quote, that it represents an improvement and that it exerts a pure downward force. And I think the fact that it's in the present invention is important, too, because while it may not be dispositive by itself, in a more recent trading technologies versus e-speed case of this Court, 595F31340 at pages 1353 and 1354, this Court said that if it's placed as a description of the present invention versus some possible embodiment, that strongly suggests that the claim should be construed in that manner. And it goes beyond that, because then, of course, we point out in our briefing the objects of the invention, too. It's pointed out that the bearing base must be maintained parallel. It says the bearing, quote, forces are applied vertically with no binding or twisting, close quote. And it says, quote, the bearing supports are movable to apply only vertical forces to the levers. That's in Column 2 of the patent. And then even following later in the patent, in Column 4, there's repeated descriptions of the inventions, and this is the one I noted earlier, Your Honor, where the patent itself says the bearing must remain vertical for this to operate properly. It says, for the scale, quote, to be accurate, the force applied through the bearing members must be vertical, but may not include a twisting or lengthwise moment of force on the force levers. And again, there's repeated other quotes I could give you from the same column, but it's stated over and over that the bearings must remain vertical. And our impression of this case is pretty simple. HOMETICS doesn't infringe, because HOMETICS is using bearings which are exactly alike in all pertinent respects to the prior art bearings that were disclaimed in this patent. Okay. Thank you. Thank you, Mr. Allen. Mr. Pasternak, you have a couple of minutes for rebuttal. Oh. Oh, I'm sorry. Say one second. I had a housecleaning matter. You had to roll your time, so you're entitled to reopen. No, it's a housecleaning matter. It's probably relatively unimportant, but on Page 24 of our brief, there was a typo at the top of the page. It referred to Joint Appendix 168, and that should have been Joint Appendix 168. It's a reference to the one that you say. Oh, it's the opinion. That's right. All right. Thank you, Your Honor. That was the April 29th opinion that's in that six. That's right. That's right. Yeah. Thank you, Your Honor. Mr. Pasternak. The text that Mr. Halen quoted in the beginning of his argument using the word parallel were not part of the claim construction per se. He pulled cherry-picked words out of the general discussion and somehow implies that that was part of the construction. I looked at them quickly, but I think if you examine that, you'll see. There's a lot of other words there, too, that you could pull out and say are part of the construction. It doesn't mean we're on notice that the construction was going to change for that word to be part of the construction we were facing. I wanted to address the whole discussion about the dimple and the tabs. Yeah. If you look hard at that structure, Your Honors, the structure of the accused product with the dimple and the tabs, it's a three-point contact between the bearing and the base. We believe that there probably is no pivoting in the loaded assembled product because of that. It's hard to envision how there can be any pivoting, which just exemplifies why the record as developed is vacant on what someone would think about how the scale works given that structure. Well, I would assume, and you can correct me if this is not your assumption as well, but that the pivoting would occur during the time that the loading is occurring. In other words, you start with an unloaded scale, and as the person steps on it and there's a little movement around, that's the point at which the bearings would do whatever adjustment that they do. And by the time the person puts the whole weight on there at that point, everything is going to be pretty well fixed in place, but the accommodation has already been completed. Is that logistic? You said it better than I can. That's the dynamic nature of a scale. And I think that's why Mr. Halen hasn't addressed that. He says it's a disclaimer. But he would say, I think he would say, that that's exactly the way the 326 works. Well, but he says his scales operate like the 326, which results in twisting and inaccuracies. So how can they advertise the accuracy and say they behave in a way which results in inaccuracies? Well, I think he would say that it is not a material difference for accuracy. I understand that's your argument, and it's a fair argument, but I don't think that he would say we're claiming a scale that's inaccurate. Or another way of putting it is he might accept a certain amount of inaccuracy in order to have the manufacturing convenience and efficiency that goes into it, which is inherent in the old style of bearing. That's a fair way to put it, I think, Your Honor. My last point, the trading technologies case cited, I'm not privy to having read it. The site, frankly, didn't make sense to me in this context. But what I wanted to point out, this is an improvement patent, and we talk about an old feature and what we've done to fix it. I don't know if that case even addresses that point. Thank you for your time, Your Honors. Thank you. Your Honor, do we have one minute? Well, we don't entertain sir rebuttal unless there was something. Not normally. Well, what is it that you wanted to address? I just wanted to address a possible misimpression that was left. Our bearings are not three-point bearing. Well, we have the record. I think we're beyond the scale. Okay. They're always tilted. That's the final one. Because the bearing pivot is six down lower, it's always tilting. I understand. Thank you. We have that. We not only have the record, but we also have the scales to look at. Thank you. Thank you. The case is submitted, and that ends the proceedings for today. Thank you. All rise. Thank you.